UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

L.G., *et al.*,

                  Plaintiffs,

-v-

New York City Department of Education,

                  Defendant.

23-CV-9268 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff L.G. is a sixteen-year-old child with a disability under the classification of emotional disturbance who receives special education services from the New York City Department of Education (the "DOE"). Because L.G. is a minor, this action is brought by and through L.G.'s mother and legal guardian, N.G. (together, "Plaintiffs"). Plaintiffs filed this action against the DOE pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. Presently before the Court is Plaintiffs' motion for a temporary restraining order and preliminary injunction to order DOE to fund L.G.'s placement at Crossroads Academy RTC ("Crossroads") on a monthly basis during the pendency of the due process proceedings or until DOE provides L.G. with another suitable residential placement as specified in L.G.'s Individualized Education Plan ("IEP"). (ECF No. 6.)

    Plaintiffs filed a memorandum of law in support of their motion for a temporary restraining order and preliminary injunction. (ECF No. 8.) The Court held a telephone conference with the parties on October 27, 2023. The DOE filed a letter in opposition to Plaintiffs' motion on October 30, 2023. (ECF No. 14.) Plaintiffs also filed a reply letter in support of their motion on October 30, 2023. (ECF No. 16.) Plaintiffs filed a second reply letter

in support of their motion on October 31, 2023.  (ECF No. 18.)  For the reasons that follow, Plaintiffs' motion for a temporary restraining order and preliminary injunction is granted.

**I.     Background**

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education" (FAPE) and "to ensure that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A), (B).  A FAPE should "emphasize[ ] special education and related services designed to meet [a disabled child's] unique needs and prepare [the child] for further education, employment, and independent living." *Id.* § 1400(d)(1)(A).  States that provide a FAPE to all children with disabilities are eligible for federal funding under the IDEA.  *Id.* § 1412(a)(1)(A); *see Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 192 (2d Cir. 2005).  New York State receives federal funds under the IDEA; therefore, it must comply with the Act's requirements.  *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 123 (2d Cir. 1998).

The IDEA requires that a state provide each disabled child with an IEP.  *See* 20 U.S.C. § 1414(d)(1)(A).  The IEP is "[t]he 'centerpiece' of the IDEA's education delivery system." *Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.*, 297 F.3d 195, 197 (2d Cir. 2002) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)).  The IDEA also requires participating States to develop an administrative review process for parents who to challenge the adequacy of the child's IEP.  20 U.S.C. § 1415(b)(6)-(8).  New York has implemented a two-tier system of administrative review, after which parents may seek judicial review in state or federal court. *Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 525 (2d Cir. 2020).

The IDEA includes a "pendency" or "stay-put" provision "that provides that, while the administrative and judicial proceedings are pending and 'unless the school district and the parents agree otherwise,' a child must remain, at public expense, 'in his or her then-current

educational placement.'" *Id.* at 526 (citing 20 U.S.C. § 1415(j)). "The term 'educational placement' refers 'only to the general type of educational program in which the child is placed'—*i.e.*, 'the classes, individualized attention and additional services a child will receive.'" *Id.* (first citing *Concerned Parents v. N.Y. City Bd. of Educ.*, 629 F.2d 751, 753 (2d Cir. 1980), and then citing *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 419 (2d Cir. 2009))

## II. Legal Standard

In the Second Circuit, the standards for a temporary restraining order and preliminary injunction are the same. *See Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008). Plaintiffs must show (1) "a likelihood of success on the merits," (2) "that [the plaintiffs are] likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiffs' favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal quotation marks omitted).

## III. Discussion

Plaintiffs seek injunctive relief under two separate provisions of the IDEA. First, Plaintiffs request that DOE be required to fund Crossroads as L.G.'s "stay-put" placement pursuant to 20 U.S.C. § 1415(j). And second, in the alternative, Plaintiffs request that the Court equitably declare Crossroads as L.G.'s placement and require DOE to fund the placement pursuant to 20 U.S.C. § 1415(i)(2)(C)(iii).

### A. Exhaustion of Administrative Remedies

The IDEA requires that any available administrative remedies be exhausted before a lawsuit is filed in federal court. *Ventura de Paulino*, 959 F.3d at 530 (citing 20 U.S.C. § 1415(i)(2)(A)). The Second Circuit has explained that, absent an exception, exhaustion of administrative remedies under the IDEA is a "jurisdictional prerequisite" and a "plaintiff's

3

failure to exhaust. . . deprives a court of subject matter jurisdiction" over any IDEA claims. *Id.* (internal citations omitted).

The Court therefore first considers DOE's argument that Plaintiffs are not entitled to preliminary injunctive relief because Plaintiffs have failed to exhaust their administrative remedies. The Second Circuit has explained that when "an action alleg[es a] violation of the stay-put provision," such action "falls within one, if not more, of the enumerated exceptions" to the IDEA's exhaustion requirement." *Id.* at 531. This is the case here. Plaintiffs allege in their complaint and motion for a temporary restraining order and preliminary injunction that DOE violated the stay-put provision of the IDEA. The Second Circuit has made clear that Plaintiffs need not actually prevail on the merits of this claim in order to meet the exception to the IDEA's exhaustion requirement. *Id.* Plaintiffs' allegation that the DOE has violated the stay-put provision is sufficient to meet the exception. *Id.* Therefore, the Court concludes that it has subject matter jurisdiction and proceeds to determining whether Plaintiffs have made a proper showing to receive a temporary restraining order and preliminary injunction.

### B. Injunctive Relief Pursuant to 20 U.S.C. § 1415(j)

The "stay-put" provision of the IDEA provides that:

> Except as provided in subsection (k)(4), during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j). Thus, the provision operates as an injunction that keeps the student in the "then-current educational placement." *L.B. by & through S.B. v. New York City Dep't of Educ.*, No. 1:21-CV-9356 (MKV), 2022 WL 220085, at *3 (S.D.N.Y. Jan. 25, 2022). "Where, as here, the stay-put provision is invoked, [the court's] inquiry generally focuses on identifying the

child's 'then-current educational placement,' as it is the only educational program the school district is obligated to pay for during the pendency of an IEP dispute." *Ventura de Paulino*, 959 F.3d at 532.  "The term 'then-current educational placement' in the stay-put provision typically refers to the child's last agreed-upon educational program before the parent requested a due process hearing to challenge the child's IEP." *Id.*

L.G.'s most recent IEP meeting was held on June 15, 2023, during which all parties agreed that L.G. requires a 12-month placement in a residential non-public school.  (ECF No. 10-1 ("IEP") at 23-25; ECF No. 10 ("N.G. Decl.") ¶ 6.)  Neither Plaintiffs nor the DOE dispute the IEP's recommendation that L.G. be placed in a non-public residential program.  Through Plaintiff's due process complaint challenges DOE's failure to find an appropriate residential placement for L.G. and other aspects of the IEP, Plaintiffs do not challenge the IEP's recommendation that L.G. be placed in a non-public residential program.  Therefore, the June 15, 2023 IEP's recommendation of a non-public residential placement constitutes the last agreed-upon educational program.

None of the residential placement schools that DOE referred L.G. for the 2023-2024 school year are able or willing to serve L.G.  DOE advised N.G. that it had referred L.G. to thirteen schools.  (N.G. Decl. ¶ 12.)  Of those schools, two did not have openings and nine declined to serve L.G., stating that they could not meet L.G.'s needs.  (*Id.*)  There were two remaining schools that had received referrals, but DOE advised N.G. that schools would contact N.G directly if they have openings and could serve L.G., and N.G. has not been contacted by any state-approved residential schools.  (*Id.* ¶¶ 12-13.)

In light of the unavailability of the residential programs, DOE offered an interim public-school placement for L.G. while pursuing placement at a State-approved non-public school as

recommended in L.G.'s IEP.  (ECF No. 14 at 2.)  That interim placement is Forest Hills High School, which is a public high school that is attended on school days by both students without disabilities and some students with IEPs.  (ECF No. 17 ("Stead Decl.") ¶ 3.)  Forest Hills High School is not a residential educational program, and therefore, clearly fails to satisfy L.G.'s IEP. (*Id.* ¶ 4.)  Left without a residential placement for the 2023-2024 school year, N.G. unilaterally enrolled L.G. at Crossroads, and now seeks to invoke the "stay-put" provision to require DOE to fund the tuition at Crossroads as L.G.'s pendency placement.

The DOE argues that Second Circuit case law forecloses Plaintiffs' ability to obtain this relief.  In *Ventura de Paulino v. New York City Dep't of Education*, the Second Circuit explained that:

> the parent cannot. . . determine that the child's pendency placement would be better provided somewhere else, enroll the child in a new school, and then invoke the stay-put provision to force the school district to pay for the new school's services on a pendency basis. To hold otherwise would turn the stay-put provision on its head, by effectively eliminating the school district's authority to determine how pendency services should be provided.

*Ventura de Paulino*, 959 F.3d at 534; *see also L.B. by & through S.B.*, 2022 WL 220085, at *3.

This case is distinguishable from *Ventura de Paulino*.  In *Ventura de Paulino*, the parents and the DOE had agreed that the students' educational program would be provided by one school, but when the parents became dissatisfied with changes to that school's management and philosophy, the parents unilaterally enrolled their children in another school.  *Ventura de Paulino*, 959 F.3d at 534.  *Ventura de Paulino* was not addressing a situation like the one presented here, where the placements are unavailable, and the DOE's proposed interim placement clearly fails to satisfy the student's IEP.

In dicta in *Ventura de Paulino*, the Second Circuit stated that it was "not consider[ing] . . . any question presented where the school providing the child's pendency services is no longer

6

available and the school district either refuses or fails to provide pendency services to the child." *Id.* at 534 n.65. The Second Circuit further noted "that under certain extraordinary circumstances not presented [in *Ventura de Paulino*], a parent may seek injunctive relief to modify a student's placement pursuant to the equitable authority provided in 20 U.S.C. § 1415(i)(2)(B)(iii)." *Id.* (citing *Wagner v. Bd. of Educ. of Montgomery Cty.*, 335 F.3d 297, 302-03 (4th Cir. 2003) (involving a situation in which the pendency placement was no longer available, and the school district had failed to propose an alternative, equivalent placement)).

The Court therefore considers whether this case presents such extraordinary circumstances and whether a preliminary injunction may be issued in this case based on its equitable remedial powers pursuant to 20 U.S.C. § 1415(i)(2)(B)(iii).

        **C.**       **Injunctive Relief pursuant to 20 U.S.C. § 1415(i)(2)(B)(iii)**

Since *Ventura de Paulino*, at least one court in this District has entered a preliminary injunction pursuant to 20 U.S.C. § 1415(i)(2)(B)(iii) under facts similar to those presented here. *See A.H. v. New York City Department of Education*, 22-CV-9861 (LGS), (S.D.N.Y. Nov. 23, 2022).

              **1.**       **Likelihood of Success on the Merits**

This case falls precisely into the category of "extraordinary" cases the Second Circuit identified in *Ventura de Paulino* as appropriate for injunctive relief under 20 U.S.C. § 1415(i)(2)(B)(iii). None of the residential program schools that would have served as L.G.'s pendency placement are available, and the school district has failed to propose an alternative, equivalent placement. DOE argues that it has provided pendency services to L.G. because DOE has offered an interim placement at Forest Hills High School. But Forest Hills High School is not a residential program, and is therefore clearly not an equivalent placement, and fails to satisfy L.G.'s IEP. Allowing DOE to offer any pendency placement—regardless of how

egregiously that placement fails to satisfy the student's IEP—would render meaningless a student's right to a pendency placement.

Plaintiffs have submitted declarations detailing the educational program as Crossroads and Crossroads' ability to serve L.G. in accordance with L.G.'s IEP.  (ECF Nos. 7, 8-2, 8-3.) Plaintiffs have also shown that DOE has previously been ordered to fund Crossroads as a residential educational placement pursuant to the IDEA.  (ECF No. 8-4.)

The Court concludes that Plaintiffs have shown a likelihood of success on the merits.

### 2. Irreparable Harm

Irreparable harm is "the single most important prerequisite for the issuance" of injunctive relief.  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).  Irreparable harm must be "actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm."  *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).  Plaintiffs have shown a likelihood of actual and imminent irreparable harm.  N.G. was able to borrow money from her mother to pay for a placement at Crossroads for September and a one-month security deposit, which has been applied to the October tuition, but N.G. cannot afford to pay anything for November.  (N.G. Decl. ¶¶ 14-15, 20.)  Crossroads has agreed to allow L.G. to remain in the program until Friday, November 3, 2023, but L.G. will be discharged thereafter in the absence of agreement by DOE or a preliminary injunction requiring that DOE fund the Crossroads tuition.  (ECF No. 15 ("Dahlin Decl.") ¶ 5.)  Thus, in the absence of a preliminary injunction, Plaintiffs will suffer actual and imminent irreparable harm.

### 3. Balance of the Equities and the Public Interest

Finally, the Court concludes that the balance of the equities favors Plaintiffs, and that a preliminary injunction would serve the public interest.  DOE has failed to provide a pendency

placement that satisfies L.G.'s IEP, has offered Plaintiffs only a pendency placement that violates L.G.'s IEP, and has given no indication of when it will offer a pendency placement that satisfies L.G.'s IEP. In the absence of a preliminary injunction, L.G. would be left with no pendency placement that satisfies L.G.'s IEP, and the 2023-2024 school year already well under way. For these reasons, the Court concludes that the balance of the equities favors Plaintiffs and that a preliminary injunction is in the public interest.

**IV.  Conclusion**

For the foregoing reasons, Plaintiffs motion for a temporary restraining order and preliminary injunction is GRANTED.

DOE shall fund L.G.'s placement at Crossroads Academy RTC on a monthly basis during the pendency of the due process proceedings.

The parties are directed to file a joint status letter by December 29, 2023.

The Clerk of Court is directed to close the motions at ECF No. 6 and ECF No. 14.

SO ORDERED.

Dated: November 3, 2023
       New York, New York

_____
J. PAUL OETKEN
United States District Judge